1   ROBBINS GELLER RUDMAN
       & DOWD LLP
2   SHAWN A. WILLIAMS (213113)
    Post Montgomery Center
3   One Montgomery Street, Suite 1800
    San Francisco, CA  94104
4   Telephone:  415/288-4545
    415/288-4534 (fax)
5   shawnw@rgrdlaw.com
        – and –
6   DARREN J. ROBBINS (168593)
    DAVID C. WALTON (167268)
7   655 West Broadway, Suite 1900
    San Diego, CA  92101
8   Telephone:  619/231-1058
    619/231-7423 (fax)
9   darrenr@rgrdlaw.com
    davew@rgrdlaw.com
10
    Attorneys for Plaintiff
11
    [Additional counsel appear on signature page.]
12
                        UNITED STATES DISTRICT COURT
13
                      NORTHERN DISTRICT OF CALIFORNIA
14
15  DAVID SMITH, Individually and on Behalf of )   No.
    All Others Similarly Situated,             )
16                                             )   CLASS ACTION
                              Plaintiff,       )
17                                             )   COMPLAINT FOR VIOLATION OF THE
          vs.                                  )   FEDERAL SECURITIES LAWS
18                                             )
    TELENAV, INC., H.P. JIN, DOUGLAS S.        )
19  MILLER, SHAWN CAROLAN, SAMUEL              )
    CHEN, HON JANE CHIU, SOO BOON KOH,         )
20  JOSEPH M. ZAELIT, J.P. MORGAN              )
    SECURITIES INC. and DEUTSCHE BANK          )
21  SECURITIES INC.,                           )
                                               )
22                            Defendants.      )
                                               )   DEMAND FOR JURY TRIAL
23  _____)

24

25

26

27

28

**NATURE OF THE ACTION**

1.      This is a class action on behalf of all persons or entities who acquired the common stock of TeleNav, Inc. ("TeleNav" or the "Company") pursuant to the Company's false and misleading Registration Statement and Prospectus issued in connection with its May 13, 2010 initial public offering ("IPO"), seeking to pursue remedies under the Securities Act of 1933 (the "1933 Act").

2.      TeleNav is a provider of wireless location-based services ("LBS"), including global positioning system ("GPS") navigation, mobile resource management ("MRM"), asset GPS tracking ("AVL") and local search.  The Company is engaged in providing location-based applications delivered via a mobile device.  The Company was the first to launch a GPS navigation system on mobile phones in the United States.  The Company has partnered with wireless carriers and device manufacturers. It offers products in 29 countries on 15 carriers covering one billion subscribers on approximately 500 devices.  The Company's products include TeleNav GPS Navigator, TeleNav Track and TeleNav Shotgun.[1]  TeleNav generates its revenue primarily through its relationships with wireless carriers, with TeleNav's largest wireless relationship by far being with Sprint Nextel Corporation ("Sprint").   TeleNav's business depends on maintaining favorable contracts with wireless carriers.

3.      On May 13, 2010, TeleNav accomplished its IPO of 7 million shares of common stock at $8.00 per share (including 5.5 million shares sold by TeleNav and 1.5 million shares sold by stockholders, with an option to the underwriters for a period of 30 days to purchase up to 1.05 million additional shares from TeleNav for over-allotments), for gross proceeds of $52.4 million to TeleNav (including the over-allotment), pursuant to a Registration Statement and Prospectus (collectively, the "Registration Statement").  The Registration Statement failed to disclose that the Company would soon be renegotiating its current contract for TeleNav to provide Sprint with its Sprint Navigation application, which would result in lower overall revenues to TeleNav.

---

[1]      The Company was founded in 1999 as Televigation, Inc. and changed its name to TeleNav in September 2005.

1      4.     Following the IPO, TeleNav's stock largely traded in the $8-$9 per share range until

2 July 29, 2010.

3      5.     On July 29, 2010, after the market closed, TeleNav announced its fourth quarter fiscal

4 2010[2] results and disclosed that it had started negotiations regarding contract roll-over with Sprint

5 early and, if successful, the contract roll-over would probably lead to an aggregate reduction in

6 revenue from its largest customer.

7      6.     On this news, TeleNav's stock price plunged $3.47 per share, to close at $5.44 per

8 share on July 30, 2010, a one-day decline of 39% on high volume.  The stock continued to decline to

9 below $5 per share over the next few weeks as investors absorbed the implications of TeleNav's

10 announcement.

11      7.     Thus, the true facts which were omitted from the Registration Statement were:

12      (a)     Negotiations had commenced or would shortly commence on the Sprint

13 contract in a manner which would lead to reduced revenues for TeleNav.

14      (b)     The unwillingness of Sprint to continue with the same contract terms beyond

15 December 31, 2010 would not only mean lower revenues from Sprint, but had negative implications

16 for TeleNav's other wireless relationships.

17      (c)     Adverse changes to the Sprint relationship would cause TeleNav's results to

18 trend adversely compared to the trends included in the Registration Statement.

19                         **JURISDICTION AND VENUE**

20      8.     The claims asserted herein arise under and pursuant to §§11 and 15 of the 1933 Act

21 [15 U.S.C. §§77k and 77o].

22      9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.

23 §1331 and §22 of the 1933 Act.

24

25

26   _____

27 [2]     TeleNav's fiscal year ends June 30.

28

10.   Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because the defendants maintain an office in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

11.   In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

<div align="center"><b>PARTIES</b></div>

12.   Plaintiff David Smith acquired the common stock of TeleNav pursuant to the IPO, as set forth in the accompanying certification, and has been damaged thereby.

13.   Defendant TeleNav is a provider of wireless LBS, including GPS navigation, MRM, AVL and local search.  TeleNav is headquartered in Sunnyvale, California.  Its stock is traded in an efficient market on the NASDAQ.

14.   Defendant H.P. Jin ("Jin") co-founded TeleNav in October 1999.  Defendant Jin serves as Chairman of the Board, President and Chief Executive Officer ("CEO") of TeleNav. Defendant Jin signed the false and misleading Registration Statement.

15.   Defendant Douglas S. Miller ("Miller") serves as Chief Financial Officer ("CFO") and Treasurer of TeleNav.  Defendant Miller signed or authorized the signing of the false and misleading Registration Statement.

16.   Defendant Shawn Carolan ("Carolan") serves as a director of TeleNav.  Defendant Carolan signed or authorized the signing of the false and misleading Registration Statement.

17.   Defendant Samuel Chen ("Chen") serves as a director of TeleNav.  Defendant Chen signed or authorized the signing of the false and misleading Registration Statement.

18.   Defendant Hon Jane (Jason) Chiu ("Chiu") serves as a director of TeleNav. Defendant Chiu signed or authorized the signing of the false and misleading Registration Statement.

19.   Defendant Soo Boon Koh ("Koh") serves as a director TeleNav.  Defendant Koh signed or authorized the signing of the false and misleading Registration Statement.

20.   Defendant Joseph M. Zaelit ("Zaelit") serves as a director of TeleNav.  Defendant Zaelit signed or authorized the signing of the false and misleading Registration Statement.

21.     The defendants referenced above in ¶¶14-15 are referred to herein as the "Officer Defendants."

22.     The defendants referenced above in ¶¶14 and 16-20 are referred to herein as the "Director Defendants" and are named as defendants solely for violations of the 1933 Act.

23.     Defendant J.P. Morgan Securities Inc. ("JP Morgan") is the U.S. investment banking arm of financial services giant JPMorgan Chase & Co.  JP Morgan provides debt and equity underwriting, M&A and corporate restructuring advisory, securities dealing and brokerage, and trade execution services for large-market companies and institutional investors.  JP Morgan acted as joint book-running manager and underwriter for TeleNav's IPO, helping to draft and disseminate the offering documents.

24.     Defendant Deutsche Bank Securities Inc. ("Deutsche") is the U.S. investment banking and securities arm of Deutsche Bank.  Deutsche provides investment banking products and services. Deutsche acted as joint book-running manager and underwriter for TeleNav's IPO, helping to draft and disseminate the offering documents.

25.     The defendants referenced above in ¶¶23-24 are referred to herein as "Underwriter Defendants."

26.     Defendant TeleNav and the Officer Defendants and the Director Defendants who signed the Registration Statement are strictly liable for the false and misleading statements incorporated into the Registration Statement.  The Underwriter Defendants drafted and disseminated the offering documents and were paid more than $3 million in connection therewith.  The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who acquired shares of TeleNav common stock traceable to the Company's false and misleading Registration Statement for its IPO (the "Class"), and who were damaged thereby.  Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their

immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

28.     The members of the Class are so numerous that joinder of all members is impracticable.  TeleNav stock was actively traded on the NASDAQ.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by TeleNav or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.  TeleNav has more than 11.5 million shares of stock outstanding.

29.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

30.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

31.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the 1933 Act was violated by defendants' acts as alleged herein;

(b)     whether statements made by defendants to the investing public in the Registration Statement misrepresented material facts about the business, operations and management of TeleNav; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

32.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of

1   individual litigation make it impossible for members of the Class to individually redress the wrongs

2   done to them.  There will be no difficulty in the management of this action as a class action.

3                                     **BACKGROUND**

4          33.    TeleNav provides wireless LBS in North and South America, Asia, and Europe.  It

5   offers TeleNav GPS Navigator, which provides voice and onscreen driving directions on mobile

6   phones and smartphones; and TeleNav Track, which offers on-demand workforce management tools

7   allied with the most advanced GPS navigation and tracking capabilities.  The Company also offers

8   MRM, asset GPS tracking, and local search solutions.  It serves the transportation, field services,

9   construction, government, and healthcare industries.  TeleNav's largest customer is Sprint, with

10  Sprint representing a majority of TeleNav's sales.

11                     **FALSE AND MISLEADING STATEMENTS**
                       **MADE IN CONNECTION WITH THE IPO**
12

13         34.    In October 2009, the Company filed a Form S-1 Registration Statement (and

14  Amendments thereto) in connection with its IPO, which Registration Statement was declared

15  effective by the SEC on or about May 13, 2010.  TeleNav also posted better-than-expected fourth-

16  quarter results and forecast current-quarter results above expectations.

17         35.    On May 13, 2010, TeleNav issued a press release entitled "TeleNav Announces

18  Pricing of Initial Public Offering of Common Stock," which stated in part:

19         TeleNav, Inc., a provider of location based services, or LBS, including voice guided
           navigation, on mobile phones, today announced the pricing of the initial public
20         offering of 7,000,000 shares of common stock at a price to the public of $8.00 per
           share.  The shares will begin trading on the NASDAQ Global Market on May 13,
           2010 under the ticker symbol "TNAV."  Of the shares of common stock in the
21         offering, TeleNav is offering 5,500,000 shares and selling stockholders are offering
           1,500,000 shares.  In addition, TeleNav has granted the underwriters a 30-day option
22         to purchase up to an additional 1,050,000 shares of common stock from TeleNav,
           solely to cover over-allotments, if any.
23
           J.P. Morgan Securities Inc. and Deutsche Bank Securities Inc. are acting as
24         joint book-running managers for the offering.  Robert W. Baird & Co. Inc.,
           Canaccord Genuity Inc., Piper Jaffray & Co. and Pacific Crest Securities LLC are
25         acting as co-managers.

26         36.    On May 13, 2010, the Company filed a Form S-1/A Registration Statement with the

27  SEC to facilitate the offering of 7 million shares of TeleNav common stock to the public.  The

28  Registration Statement became effective on May 13, 2010.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                              - 6 -

37.     The Registration Statement and accompanying Prospectus stated:

We are a leading provider of location based services, or LBS, including voice guided navigation, on mobile phones.  Our LBS solutions provide consumers and enterprises with convenient and easy to use location specific, real time and personalized features and functions.  By using an integral tool of their daily lives, their mobile phone, their end users can access our LBS almost anytime and anywhere to efficiently navigate to their destinations and easily obtain relevant local information.  Through our hosted service delivery model, we provide our solutions through the networks of leading wireless carriers in the United States, including Sprint Nextel Corporation, or Sprint, and AT&T Inc., or AT&T, as well as through certain carriers in other countries.  Our flexible and proprietary LBS platform enables us to efficiently provide our LBS to millions of end users, across more than 500 types of mobile phones, all major mobile phone operating systems and a broad range of wireless network protocols.

38.     In discussing the Company's competitive advantages, the Registration Statement/Prospectus emphasized TeleNav's relationships with the wireless carriers:

*Strong and deep partnerships with key members of the LBS value chain*.  We partner with leading wireless carriers, mobile phone manufacturers, application developers, map providers and other third parties to deliver high quality, robust LBS to our end users.  Our wireless carrier partners continue to make investments that foster our long term relationships because our LBS help them to increase their data ARPU and strengthen their subscriber relationships.

*Closely aligned business objectives with wireless carrier partners*.  Our hosted delivery model enables our wireless carrier partners to brand and market our LBS and leverage our infrastructure, partnerships and expertise.  Our offerings enhance subscriber loyalty and increase revenue for our wireless carrier partners while helping us to drive adoption of our LBS without incurring significant sales and marketing costs.

39.     The Form S-1/A outlined the Company's historical sales and its purportedly current business operations with Sprint and AT&T:

Revenue related to services provided through Sprint Nextel Corporation, or Sprint, comprised approximately 90%, 62% and 61% of revenue for fiscal 2007, 2008 and 2009, respectively, and approximately 61% and 55% for the nine months ended March 31, 2009 and 2010, respectively. Receivables due from Sprint were approximately 65% and 58% of total accounts receivable at June 30, 2008 and 2009, respectively, and approximately 59% at March 31, 2010, respectively. Revenue related to services provided through AT&T Inc., or AT&T, comprised approximately 2%, 26% and 29% of revenue for fiscal 2007, 2008 and 2009, respectively, and approximately 29% and 34% for the nine months ended March 31, 2009 and 2010, respectively. Receivables due from AT&T were approximately 27% and 29% of total accounts receivable at June 30, 2008 and 2009, respectively, and approximately 27% at March 31, 2010, respectively.

*       *       *

We are substantially dependent on two wireless carrier partners for a large portion of our revenue. In fiscal 2007, 2008, 2009 and the nine months ended March

31, 2010, Sprint represented 90%, 62%, 61% and 55% of our revenue, respectively. Sprint is not required to offer us LBS. Our current agreement with Sprint expires on December 31, 2011; however, our right to be Sprint's exclusive provider of Sprint Navigation expires on December 31, 2010. Commencing on December 31, 2010, Sprint may terminate its agreement with us at any time by giving us 30 business days prior written notice. Our failure to renew or renegotiate this agreement on favorable terms or at all, a termination of our agreement by Sprint or our failure to otherwise maintain our relationship with Sprint would substantially reduce our revenue and significantly harm our business, operating results and financial condition. In March 2008, Sprint began offering the Simply Everything plans which currently include our LBS. As a result, we have experienced a significant increase in end users and benefitted from increased marketing exposure since the Simply Everything plans' introduction. If Sprint reduces its expenditures for marketing our LBS, changes its Simply Everything plans to eliminate our services, prices our LBS at a level that makes them less attractive or offers and promotes competing LBS, in lieu of, or to a greater degree than, our LBS, our revenue would be materially reduced and our business, operating results and financial condition would be materially and adversely affected.

40.     On May 17, 2010, the Company issued a press release entitled "TeleNav Announces Exercise of Overallotment Option in Common Stock Offering," which stated in part:

> TeleNav, Inc., a provider of location based services, or LBS, including voice guided navigation, on mobile phones, today announced that, in connection with its previously disclosed underwritten public offering, the underwriters have exercised, in full, their option to purchase an additional 1,050,000 shares of common stock to cover overallotments.
>
> The full exercise of the overallotment option brings the total number of shares of common stock to be sold in the public offering to 8,050,000. Of the shares of common stock in the offering, TeleNav offered 6,550,000 shares and selling stockholders offered 1,500,000 shares. The aggregate net proceeds received by the company are expected to be approximately $44.7 million, after the underwriting discount and estimated offering expenses payable by the company. The offering is expected to close on or about May 18, 2010, subject to customary closing conditions.
>
> J.P. Morgan Securities Inc. and Deutsche Bank Securities Inc. acted as joint book-running managers for the offering. Robert W. Baird & Co. Inc., Canaccord Genuity Inc., Piper Jaffray & Co. and Pacific Crest Securities LLC acted as co-managers.

41.     Following the IPO, TeleNav's stock traded in the $8-$9 per share range until July 29, 2010.

42.     On July 29, 2010, after the market closed, the Company issued a press release entitled "TeleNav Reports Fourth Quarter and Fiscal 2010 Financial Results," announcing its financial results for its first quarter as a public company, which stated in part:

> TeleNav, Inc., a leading provider of location-based services, or LBS, including voice guided navigation on mobile phones, autos and enterprise LBS, today announced its financial results for the fourth quarter and fiscal year ended June 30, 2010.

**Financial Highlights**:

- Record revenue for the fourth quarter of fiscal 2010 grew 45 percent over the prior year to $49.5 million.

- Net income for the fourth quarter of fiscal 2010 grew 3 percent over the prior year to $10.6 million.

- Record revenue for fiscal 2010 grew 54 percent year over year to $171.2 million.

- Record net income for fiscal 2010 grew 40 percent year over year to $41.4 million.

- Cash generated from operations for the fourth quarter of fiscal 2010 was $24.7 million.

- Average monthly revenue per end user (ARPU) for the fourth quarter of fiscal 2010 decreased 13 percent over the fourth quarter of fiscal 2009 to $1.03.

- Average monthly paying end users for the fourth quarter of fiscal 2010 increased 69 percent year over year to 16.1 million.

- ***Completed initial public offering in May 2010 with approximately $44.6 million in net proceeds to TeleNav, after underwriting commissions and discounts and offering expenses***.

"In our first quarter as a public company, TeleNav is pleased to report solid financial results for the fourth quarter and fiscal 2010," said HP Jin, president, CEO and co-founder of TeleNav. . . .

Revenue for the fourth quarter of fiscal 2010 was $49.5 million, compared to revenue of $45.1 million for the third quarter of fiscal 2010 and $34.3 million for the fourth quarter of fiscal 2009. Revenue for fiscal 2010 was $171.2 million, compared to revenue of $110.9 million in fiscal 2009.

43.     Most interesting to investors, however, was the news that TeleNav was already in negotiations with Sprint as to the roll-over of its contract and TeleNav expected such amended contract terms to results in lower revenues:

TeleNav's largest customer, Sprint, is in negotiations with TeleNav regarding potential amendment of its current contract, which expires as to TeleNav's right to be Sprint's exclusive provider of Sprint Navigation on December 31, 2010 and terminates on December 31, 2011. Sprint and TeleNav are currently in active discussions to amend material terms of that contract including an extension of the contract and TeleNav's preferred provider status, changes to the current per subscriber revenue model, and provisions for new revenue opportunities from premium products, advertising and mobile commerce. TeleNav anticipates that any extended agreement would result in declines in ARPU and significant reductions in total revenue from Sprint for bundled basic navigation services compared to the most recent quarter, but would also likely result in continued increases in the number of

subscribers. TeleNav cannot predict whether or when it will reach agreement with Sprint on these matters or what the ultimate financial impact would be.

44.     On the same day, July 29, 2010, TeleNav held a conference call for investors, media representatives and analysts, during which defendants Jin and Miller reiterated the fourth quarter 2010 financials and the first quarter 2011 forecast as reported in the July 29, 2010 press release. With respect to the press release disclosure concerning the Sprint negotiations, the Company stated again that it was in current and active discussions to amend the mature terms of the contract and that any extended agreement would result in "deep" declines in ARPU and "*significant reduction in total revenue from Sprint*":

> Sprint and TeleNav are currently in active discussions to amend the mature terms of that contract, including an extension of the contract and TeleNav's preferred provider status, changes to the current subscriber revenue model and provisions for new revenue opportunities from premium products, advertising and mobile commerce.

> Our strategy is to expand our overall user base and drive top line growth, and profitability remains unchanged.  *Yet, we anticipate that any extended agreement would result in deep declines in ARPU and a significant reduction in total revenue from Sprint for a bundled basic navigation service compared to the most recent quarter.  But, it would also likely result in a continued increase in the number of subscribers*.

> The negotiations, while ongoing, are not concluded.  As a result, we cannot predict whether we'll reach agreement with Sprint on these matters or what the ultimate financial impact would be.  I want to reiterate that our overall strategy is to expand our user base, improve top line growth, and the profitability remains unchanged.  Let me also highlight that as [sic] we continue to attract new talent to TeleNav.

45.     On July 30, 2010, JP Morgan issued a report on TeleNav which referred to the "Sprint Bombshell," downgrading the rating on the stock and cutting estimates, and stating in part:

> TeleNav reported strong F4Q results, beating EPS and revenue expectations and closed the fiscal year with 16.1 million subscribers. F1Q11 guidance also came in ahead of expectations.  Unfortunately, none of this matters because management also revealed that contract roll-over negotiations with Sprint have started early and will probably lead to an aggregate reduction in revenue from that key customer, which represents 55% of total revenue.  Growth prospects through 2012 are suddenly highly compromised.  We are slashing estimates, establishing a December 2011 price target of $7.00, and downgrading TNAV to Neutral.

<p style="text-align:center">*     *     *</p>

- **The Sprint bombshell**.  Management revealed on the conference call that contract negotiations with Sprint have intensified ahead of the December 31 exclusivity deadline.  TNAV believes the contract rollover, if successful, will

lead to an aggregate **reduction** in revenue with that key customer, which accounts for 55% of total revenue. This puts TNAV's medium-term growth prospects seriously at risk and could lead other customers to pressure pricing.

(Emphasis in original.)

46.     On July 30, 2010, Deutsche also issued a report downgrading TeleNav, which stated in part:

**Good quarter and guide, but Sprint renegotiation arises**

Telenav reported 4QFY10 revenue of $49.5 million ahead of our estimate of $46.7 million and consensus of $47.0 million; pro-forma EPS of $0.31 came in well ahead of our estimate of $0.24 and consensus of $0.25. The company guided ahead of expectations but cautioned that terms with their largest customer Sprint are being negotiated. We are lowering our rating from Buy to Hold.

**Sprint negotiation becomes an overhang**

In their press release the company warned that their 55% customer Sprint could potentially [be] looking for very different terms from the next iteration of their agreement. The company warned this could result in not only lower ARPU but also lower total revenue. While the ultimate impact of this may not be as serious as it at first sounds, until the company can provide clearer guidance on this we believe the matter will remain an overhang on the stock.

                    *         *         *

**Lowering price target from $12 to $9 and rating to Hold**

We have valued Telenav using a discounted cash flow analysis using a 2% perpetual growth rate in line with long-term industry growth and a 13% discount rate (using a 5.5% risk free rate, a beta of 1.4 and risk premium of 5%). Downside risks the threat of continued competition from free navigation providers such as Google. Upside risks include the potential for a better-than expected resolution of their Sprint contract negotiation.

                    *         *         *

Telenav reported 4QFY10 revenue of $49.5 million ahead of our estimate of $46.7 million and consensus of $47.0 million; pro-forma EPS of $0.31 came in well ahead of our estimate of $0.24 and consensus of $0.25. The company guided ahead of expectations but cautioned that terms with their largest customer Sprint are being negotiated.

Despite otherwise good results and what is likely a conservative Q1 guidance we think the renegotiation with Sprint could become a serious issue for Telenav. The chief risks associated with the company have always been the high degree of customer concentration and the emerging threat of free navigation providers such as Google.

It now appears that Sprint's success at building subscribers with its bundled pricing plans has done well enough that they are looking to reduce costs associated with that success. We believe the success of the EVO Android phone from HTC as

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    - 11 -

well as the progress of Android phones with other carriers may have prompted Sprint to consider working more closely with Google. We do not believe that Telenav will be displaced at Sprint, but we do think they will come under pressure to offer more flexible pricing terms. This may mean a further shift to advertising revenue for Telenav or some other monetization method. The point being that no one can say what the new Sprint model for Telenav will look like. On the call the company was unable to answer many questions about the subject given the ongoing nature of the negotiations.

We also think the surprise here is not that Sprint is looking to bring prices down, but that they are looking to do so this early. The company has long cautioned that over time they expect prices to go to zero for navigation. We think the company received a discounted multiple relative to SaaS peers, in part because of the shift in business model from subscription revenue to a more ad-driven model. We originally expected that to occur over a number of years, but there is now the risk that the transition may happen much sooner.

We do not mean to portray the situation as overly dire. We see the most likely outcome of the Sprint renegotiating ending with lower prices for Telenav, or possibly a split between smart phones for Google and feature phones for Telenav. But by no means do we think that Telenav will lose Sprint. There is still significant value in the company's operations. The main factor for the stock, however, will be the high degree of uncertainty. Until there is more clarity over Sprint, these concerns will prove an overhang on the stock. These concerns will likely overshadow any potential near-term positive catalysts such as the announcement of a new carrier customer or a shift from a MRR plan to a bundle by AT&T.

As a result we are lowering our rating from Buy to Hold.

We are also reducing our forward estimates to reflect the potential for faster price erosion, as below.

1Q11 was $49m and $0.21, is $50m and $0.23
2Q11 was $52m and $0.23, is $53m and $0.20
FY11 was $214m and $0.91, is $217m and $0.92
FY12 was $265m and $1.06, is $242m and $1.07
CY10 was $193m and $0.99, is $198m and $1.05
CY11 was $237m and $1.06, is $228 and $1.00

**Risks & Valuation**

We are lowering our price target from $12 to $9.

47. On July 30, 2010, *Dow Jones Newswire* issued an article entitled "TeleNav Plummets After Warning on Sprint Contract Revenue," reporting on the Company's July 29, 2010 disclosures and describing analyst downgrades and the sharp share price decline:

Shares of voice-guided navigation provider TeleNav Inc. plunged Friday as the company said any extended agreement with Sprint Nextel Corp. (S) would likely result in significantly reduced revenue from its largest customer.

The announcement sent TeleNav's shares down as much as 44% and caused at least two firms to downgrade their stock-investment ratings on the company.

TeleNav said in its fiscal fourth-quarter release late Thursday that it is in talks with Sprint regarding potential changes to their current contract. The company is the exclusive provider of Sprint Navigation until Dec. 31, and the contract terminates at the end of 2011. TeleNav added that the discussions include extension of the contract and its preferred provider status, changes to the current per subscriber revenue model, and provisions for new revenue opportunities from premium products, advertising and mobile commerce.

Though TeleNav's service providers and partners also include AT&T Inc. (T), Ford Motor Co. (F) and Verizon Wireless among others, Sprint accounts for about half of TeleNav's total revenue.

The company's stock was recently trading off 37% to $5.57 on heavy volume, down 30% from its initial public offering price in May.

TeleNav also said negotiations with Sprint will likely result in continued increases in the number of subscribers but it can't predict whether or when it will reach an agreement or what the ultimate financial impact would be.

Although TeleNav also reported fourth-quarter results that exceeded analysts' estimates and provided rosy first-quarter guidance, J.P. Morgan dismissed those figures in light of the Sprint "bombshell" and said growth prospects through 2012 are suddenly highly compromised.

The firm said that on discussing the issue with TeleNav's management, it believes Sprint is seeking an aggressive reduction in pricing, possibly citing ad-based "free" navigation as the best alternative to a negotiated agreement.

"We believe TNAV is countering with proposals for price reductions and new applications; however we sense that Sprint has the upper hand," J.P. Morgan said, cutting its stock-investment rating on TeleNav to neutral from overweight.

Robert W. Baird & Co. also downgraded TeleNav's rating, to neutral from outperform, saying the Sprint uncertainty is likely to overhang the shares. While valuation is likely to appear attractive on anticipated weakness, it said, the uncertainty makes forecasting future results difficult at best.

The firm noted that in the renegotiation a year ago, Sprint began bundling TeleNav's navigation service, which resulted in a significant boost for the company, driven by higher subscribers at a lower average monthly revenue per end user.

However, it said that "with the product already bundled, we believe that price could be the primary focus, though TNAV may be able to offset part of the impact with new products."

48.     On this news, TeleNav's stock collapsed to as low as $4.95 per share, before closing at $5.44 per share on July 30, 2010 – a one-day decline of 39% on volume of 5.1 million shares.

49.     The true facts which were omitted from the Registration Statement were:

(a)     Negotiations had commenced or would shortly commence on the Sprint contract in a manner which would lead to reduced revenues for TeleNav.

(b)     The unwillingness of Sprint to continue with the same contract terms beyond December 31, 2010 would not only mean lower revenues from Sprint but had negative implications for TeleNav's other wireless relationships.

(c)     Adverse changes to the Sprint relationship would cause TeleNav's results to trend adversely compared to the trends included in the Registration Statement/Prospectus.

<div align="center">

**COUNT I**

**For Violation of Section 11 of the 1933 Act**
**Against All Defendants**

</div>

50.     Plaintiff incorporates ¶¶1-49 by reference.

51.     This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.

52.     This Count does not sound in fraud.  All of the preceding allegations of fraud or fraudulent conduct and/or motive are specifically excluded from this Count.  Plaintiff does not allege that the Officer Defendants, Director Defendants or the Underwriter Defendants had scienter or fraudulent intent, which are not elements of a §11 claim.

53.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

54.     TeleNav is the registrant for the IPO.  The defendants named herein were responsible for the contents and dissemination of the Registration Statement.

55.     As issuer of the shares, TeleNav is strictly liable to plaintiff and the Class for any misstatements and omissions.

56.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

57. By reason of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, §11 of the 1933 Act.

58. Plaintiff acquired TeleNav shares pursuant and/or traceable to the Registration Statement for the IPO.

59. Plaintiff and the Class have sustained damages. The value of TeleNav common stock has declined substantially subsequent to and due to defendants' violations.

60. At the time of their purchases of TeleNav shares, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to July 29, 2010. Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiff filed this complaint. Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this complaint.

## COUNT II

### For Violation of Section 15 of the 1933 Act
### Against the Company, the Officer Defendants and the Director Defendants

61. Plaintiff repeats and realleges ¶¶1-49 by reference.

62. This Count is brought pursuant to §15 of the 1933 Act against the Company, the Officer Defendants and the Director Defendants.

63. The Officer Defendants and the Director Defendants each were control persons of TeleNav by virtue of their positions as directors and/or senior officers of TeleNav. The Officer Defendants and the Director Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of TeleNav. The Company controlled the Officer Defendants, the Director Defendants and all of TeleNav's employees.

64. The Officer Defendants and the Director Defendants each were culpable participants in the violations of §11 of the 1933 Act alleged in the Count above, based on their having signed or

1 │ authorized the signing of the Registration Statement and having otherwise participated in the process

2 │ which allowed the IPO to be successfully completed.

3 │ <center>**PRAYER FOR RELIEF**</center>

4 │ WHEREFORE, plaintiff prays for relief and judgment, as follows:

5 │ A. Determining that this action is a proper class action and certifying plaintiff as a Class

6 │ representative under Rule 23 of the Federal Rules of Civil Procedure;

7 │ B. Awarding compensatory damages in favor of plaintiff and the other Class members

8 │ against all defendants, jointly and severally, for all damages sustained as a result of defendants'

9 │ wrongdoing, in an amount to be proven at trial, including interest thereon;

10 │ C. Awarding plaintiff and the Class their reasonable costs and expenses incurred in this

11 │ action, including counsel fees and expert fees;

12 │ D. Awarding rescission or a rescissory measure of damages; and

13 │ E. Such equitable/injunctive or other relief as deemed appropriate by the Court.

14 │ <center>**JURY DEMAND**</center>

15 │ Plaintiff hereby demands a trial by jury.

16 │ DATED: September 2, 2010        ROBBINS GELLER RUDMAN
   │                                  &DOWD LLP
17 │                                 SHAWN A. WILLIAMS

18 │

19 │                          _____
   │                                 SHAWN A. WILLIAMS
20 │
   │                          Post Montgomery Center
21 │                          One Montgomery Street, Suite 1800
   │                          San Francisco, CA  94104
22 │                          Telephone:  415/288-4545
   │                          415/288-4534 (fax)
23 │
   │                          ROBBINS GELLER RUDMAN
24 │                            & DOWD LLP
   │                          DARREN J. ROBBINS
25 │                          DAVID C. WALTON
   │                          655 West Broadway, Suite 1900
26 │                          San Diego, CA  92101-3301
   │                          Telephone:  619/231-1058
27 │                          619/231-7423 (fax)

28 │

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                     - 16 -

1

2                                   JOHNSON BOTTINI, LLP
FRANK J. JOHNSON
FRANCIS A. BOTTINI, JR.

3                                   BRETT M. WEAVER
501 West Broadway, Suite 1720

4                                   San Diego, CA  92101
Telephone:  619/230-0063

5                                   619/238-0622 (fax)

6                                   Attorneys for Plaintiff

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   Document1

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS        - 17 -

1

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

2          Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

3    named parties, there is no such interest to report.

4

5

6                                                    _____
                                                     ATTORNEY OF RECORD FOR PLAINTIFF
                                                     DAVID SMITH

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28